## THE STATE v. DORRIS ARTHUR, Appellant.

**Division Two, November 19, 1907.**

**LARCENY: Sufficiency of Evidence.** Evidence held sufficient to support the verdict finding defendant guilty of larceny.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

There was ample evidence of the guilt of the defendant; in fact, it was overwhelming and uncontradicted.

BURGESS, J.—On the 13th day of December, 1906, the prosecuting attorney of Crawford county filed an information, duly verified, charging the defendant and one Paul Arthur with burglary and larceny, the alleged burglary and larceny consisting in the breaking into the house of H. D. Yeary and stealing therefrom eight mink hides, one red fox hide, eleven 'coon hides and five opossum hides, the property of one Joseph McIntosh, and of the value of forty dollars. A severance was granted, and the defendant was tried at the February term, 1907, of the circuit court of said county, the trial resulting in the acquittal of the defendant on the charge of burglary, and his conviction of the larceny, the jury finding that the stolen property was of the value of thirty dollars. The punishment assessed was three years in the penitentiary. Defendant's motions for a new trial and in arrest of judgment having been overruled by the court, he appealed.

The evidence on the part of the State tended to prove that the prosecuting witness, Joseph McIntosh, was a school teacher, and on the 12th day of December, 1906, boarded with Mr. and Mrs. William Vaughn. The Vaughns occupied a dwelling house that was also occupied by Mr. and Mrs. H. D. Yeary, at Wilson's Mill, Crawford county. McIntosh was the owner of a large number of valuable hides which he kept hanging on the walls of his room. About 7 o'clock, p. m., of said day, McIntosh left his room, closing the doors and windows, and leaving a lamp burning, and went to the school house, less than a quarter of a mile distant, where religious services were being conducted that evening. The Vaughn and Yeary families also attended said meeting, arriving at the school house some twenty minutes later. About 9 o'clock Mr. McIntosh returned to his home, reaching there before the other occupants, and found the door to his room open and eleven 'coon, eight mink, one red fox and five opossum hides missing. These hides he valued at thirty-five dollars. On the 14th day of December, two days after the hides were taken, McIntosh found all of them at the hide and poultry store of R. E. Johns, at St. James, in Phelps county. Johns testified that the defendant and Albert Earney came to his place of business about eleven o'clock on December 13, 1906, and that defendant sold him eleven 'coon, eight mink, one red fox and five opossum hides for twenty-five dollars and fifty cents, which hides were afterwards identified by McIntosh as his, and were produced in court at the trial. Other witnesses testified that they saw the defendant, in company with Albert Earney, at the school house on the night of December 12, 1906; that they observed him looking in at the window, but did not see him go inside. At that time Mr. McIntosh and the Vaughns and Yearys were in the school house. Albert Earney testified that he went with the defend-

206 Sup—46

ant to the school house on the night in question, both of them remaining outside, and that in a little while the defendant left, saying to witness that he was going home. A few minutes afterwards Earney left for home, going along the same road taken by defendant, which road led by the Yeary house where McIntosh lived. When Earney got near the house he saw the defendant go in the gate, step up on the porch and enter the door. He waited a few minutes and saw the defendant come out of the house, carrying a large bundle, and saw him climb over a fence, taking the bundle with him. Earney then walked on towards his home, which was about three miles from the school house, and when about a quarter of a mile from home he again met the defendant. The latter remarked that the night was so dark he could not see to cross the river, whereupon Earney invited defendant to stay all night with him, which defendant consented to do. The two then went to the home of Earney's father, where they spent the night. Next morning, in the presence of other members of the family, defendant employed Earney to drive him to St. James, saying that he was bound to go to St. James that day for the purpose of renting a room there for his family. The two drove in a buggy, and when about a quarter or a half a mile from home the defendant got out of the buggy, went into the brush about ten steps from the road, soon returning with a bundle of hides which he placed in the buggy, stating to Earney that they were McIntosh's hides, but that he had located them. After driving to St. James, the defendant tried to sell the hides to a Mr. Pinto, a hide dealer in St. James, who would not give him the price he asked, and the defendant afterwards, about eleven o'clock of that day, sold the hides to R. E. Johns for twenty-five dollars and a half.

The defendant did not testify in his own behalf, but introduced some evidence which tended to con-

tradict some of the statements made by Earney, the State's witness, who it seems had been arrested and jointly charged with the defendant with the commission of this offense. Two witnesses, John Becknell and James Gorman, testified that they saw Earney the day he was arrested, and that he said that he went to the school house on the night in question, in company with the defendant; that the defendant soon left, and that he (Earney) did not see him again until he met him on Cedar Bluff, about a quarter of a mile from the Earney home. On cross-examination, Mr. Gorman, who arrested the defendant, testified that at the time he arrested him the defendant said that he supposed he was accused of taking those hides, but that he had nothing to do with them.

The defendant is not represented in this court. We ha.e, however, gone through the record with much care, and have been unable to discover any error in it. The evidence conclusively proved his guilt. He did not testify in his own behalf, nor does he claim that he did not have a fair and impartial trial. As the instructions presented the case fairly to the jury, and the record seems to be free from error, the judgment is affirmed. All concur.